**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JASON M. ROBERTS,<br>on behalf of plaintiff and a class, | ) )  ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | 1:19-cv-02355 |
| CARRINGTON MORTGAGE<br>SERVICES, LLC, | ) ) ) ) | |
| Defendant. | ) | |

**SECOND AMENDED COMPLAINT  – CLASS ACTION**

1.       Plaintiff Jason M. Roberts brings this action to secure redress from unlawful credit and collection practices engaged in by Defendant Carrington Mortgage Services, LLC ("CMS"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), and state law.

2.       The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3.       In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. §1692(a).

4.       Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.       The FDCPA encourages consumers to act as "private attorneys general" to enforce

-1-

the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.      Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq.*

## VENUE AND JURISDICTION

7.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331, 1337 and 1367.

8.      Venue and personal jurisdiction in this District are proper because:

      a.      Defendant's collection communications were received by Plaintiff within this District;

      b.      Defendant does or transacts business within this District.

## PARTIES

9.      Plaintiff Jason M. Roberts is an individual who resides in the Northern District of Illinois.

10.      Defendant CMS is a limited liability company organized under Delaware law with its principal offices at 1600 Douglass Road, Suite 110 and 200A, Anaheim, CA 92806. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

11.      CMS is engaged in the business of mortgage servicing. Its servicing operations are in Santa Ana, CA and Fishers, IN.

12.      CMS is a "special servicer," which is mortgage industry jargon for a servicer that specializes in delinquent and defaulted loans. CMS obtains ratings from Fitch and other rating agencies as a "special servicer."

13.      CMS regularly collects delinquent mortgages owed to others and uses the mails and telephone system for that purpose.

14.      CMS is a debt collector as defined in the FDCPA.

## FACTS

15.     CMS has been attempting to collect from Plaintiff a delinquent residential mortgage loan incurred for personal, family or household purposes (housing).

16.     A copy of the note is in Appendix A and a copy of the mortgage is in Appendix B.

17.     CMS took over servicing of the loan on or about February 2, 2018. (Appendix C)

18.     At the time of the transfer of servicing, the loan was past due. (Appendix C)

### Property inspection fees

19.     The loan is an FHA loan.

20.     Under FHA regulations, 24 C.F.R. § 203.377, "The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. . . . ."

21.     The FHA interprets the regulation to mean that once a property has been found to be occupied, no further inspections may be charged.  HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d); Mortgagee Letter 81-26, 1981 WL 389744 at *1 (June 16, 1981).

22.     Furthermore, the FHA regulations are incorporated into the note and mortgage, and the restriction limits what may be charged to the borrower.  *In re Ruiz*, 501 B.R. 76, 79 (E.D. Pa. 2013); *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.,* 4:13cv669, 2016 WL 393868 (E.D. Ark. Jan. 29, 2016).

23.     Plaintiff has continually occupied the mortgaged property.

24. CMS knew that Plaintiff's property was occupied by August 15, 2018, on which date CMS personally served Plaintiff at the property in a mortgage foreclosure action. (Appendix D)

25. CMS has corresponded with Plaintiff at the property address in connection with a loss mitigation application. (Appendix E)

26. Notwithstanding CMS' knowledge of Plaintiff's occupancy of the property, CMS charged Plaintiff $20 property inspection fees for inspections on: March 20, 2018, April 13, 2018, June 1, 2018, June 20, 2018, Aug. 16, 2018, Sep. 13, 2018, Oct. 17, 2018, Nov. 9, 2018, March 1, 2019, and March 13, 2019, March 22, 2019, April 9, 2019, April 18, 2019, May 17, 2019, and June 18, 2019. This information is confirmed by Plaintiff's July 16, 2019 payoff statement. (Appendix M)

27. On information and belief, each inspection confirmed that Plaintiff occupied the property.

28. CMS sent Plaintiff monthly mortgage statements charging such amounts. (Appendices F-I)

29. Such fees were unauthorized and improper.

30. As a result of the unlawful inspection fees, Plaintiff incurred expenses such as hiring an attorney, mailing costs, distress, annoyance, and time spent addressing the matter. The fees were added to Plaintiff's mortgage balance every month as they were incurred, and increased the past due amount, which made it harder for Plaintiff to rehabilitate the loan, and which increased the amount needed to payoff the loan.

31. Class members may be applying for loan modifications, as Plaintiff did in March, 2019. The unlawful inspection fees are likely to be applied to these class members' modified principal balances if their loan modification requests are granted as mortgage owners and servicers such as CMS normally include all such fees.

32. CMS filed an Affidavit of Amounts Due and Owing in the foreclosure case

against Plaintiff which included $140 worth of property inspection fees. Plaintiff could not redeem the loan or sell the property without paying those amounts.

33. Sometime prior to or during August, 2019, Plaintiff paid off the loan.

34. The loan was paid off by Plaintiff because he feared losing his home, and he was concerned about the fees that were being added to his balance every month.

35. Plaintiff's mother took out a home equity line of credit ("HELOC") in order to provide Plaintiff to the funds necessary to pay off the loan. The interest rate on the HELOC (3.6%) was lower than the interest rate being charged by Carrington (4.5%). (Appendix A)

36. Prior to paying off the loan, Plaintiff received a new Payoff Statement from Carrington. (Appendix M) The detail of charges that came with that document includes multiple property inspection fees, although in other places the amount for such fees is recorded as zero. There is a charge for $6,688.22 for "other unpaid expenses" which has increased by over $1,300.00 since the April 8, 2019 payoff statement.

**Improper identification of creditor**

37. On March 19, 2019, Plaintiff sent CMC the letter attached as Appendix J.

38. On April 2, 2019, CMS sent Plaintiff, through counsel, the letter attached as Appendix K, stating that the current "investor" or owner of the loan is CMS.

39. On May 6, 2019, CMS sent Plaintiff, through counsel, the letter attached as Appendix L, stating that the current owner of the note is TIAA Bank.

40. These inconsistent statements are confusing and misleading.

41. The owner of a mortgage loan is important as they set the policies for loan modifications and other types of default relief, and they the ones who are liable for certain conduct with respect to the loan.

**COUNT I – FDCPA**

42. Plaintiff incorporates paragraphs 1-41.

43. CMS violated 15 U.S.C. §§1692, 1692e(2), 1692e(10), 1692f and 1692f(1) by

-5-

charging Plaintiff for unauthorized property inspection fees and representing that it had the right to collect a balance that included unauthorized property inspection fees.

44.     Section 1692e provides:

> **§ 1692e.      False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(2)     The false representation of--**
>
> **(A)     the character, amount, or legal status of any debt; . . .**
>
> **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

45.     Section 1692f provides:

> **§ 1692f.      Unfair practices**
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt . . . the following conduct is a violation of this section:**
>
> **(1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law . . . .**

## CLASS ALLEGATIONS

46.     Plaintiff brings this claim on behalf of a class.

47.     The class consists of (a) all individuals (b) who had an FHA loan serviced by Carrington Mortgage Services, LLC (c) which was past due when Carrington first began servicing the loan (d) whose property address and correspondence address were the same in Carrington's records and (e) were charged property inspection fees by Carrington while still occupying the property, (f) where either the charge was made or a statement referring to the charge was sent on or after a date one year prior to the filing of this action.

48.     On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

49. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.    Whether the inspection fees were authorized;

      b.    Whether imposition of and charging for the inspection fees violated the FDCPA.

50. Plaintiff's claim is typical of the claims of the class members. All have the same factual and legal basis.

51. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

52. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights;

      c.    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      i.    Statutory damages;

      ii.    Actual damages;

      iii.    Attorney's fees, litigation expenses and costs of suit;

      iv.    Such other and further relief as the Court deems proper.

### COUNT II – CONSUMER FRAUD ACT

53. Plaintiff incorporates paragraphs 1-41.

54. CMS engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by charging Plaintiff for property inspection fees.

55. CMS engaged in such conduct in the course of trade and commerce.

**CLASS ALLEGATIONS**

56. Plaintiff brings this claim on behalf of a class.

57. The class consists of (a) all individuals (b) who had an FHA loan serviced by Carrington Mortgage Services, LLC (c) which was secured by property in Illinois, (d) whose property address and correspondence address were the same in Carrington's records and (e) were charged property inspection fees by Carrington while still occupying the property, (f) where either the charge was made or a statement referring to the charge was sent on or after a date 3 years prior to the filing of this action.

58. On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

59. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

       a. Whether the inspection fees were authorized;

       b. Whether imposition of and charging for the inspection fees violated the Consumer Fraud Act.

60. Plaintiff's claim is typical of the claims of the class members. All have the same factual and legal basis.

61. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

62. A class action is superior for the fair and efficient adjudication of this matter, in that:

       a. Individual actions are not economically feasible.

       b. Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

against Defendant for:

      i.      Actual damages;

      ii.     Punitive damages;

      iii.    An order requiring cancellation of the charges;

      iv.    Attorney's fees, litigation expenses and costs of suit;

      vii.   Such other and further relief as the Court deems proper.

## COUNT III – BREACH OF CONTRACT

63.    Plaintiff incorporates paragraphs 1-41.

64.    CMS violated the note and mortgage by charging Plaintiff for property inspection fees.

## CLASS ALLEGATIONS

65.    Plaintiff brings this claim on behalf of a class.

66.    The class consists of (a) all individuals (b) who had an FHA loan serviced by Carrington Mortgage Services, LLC (c) whose property address and correspondence address were the same in Carrington's records and (d) were charged property inspection fees by Carrington while still occupying the property, (e) where either the charge was made or a statement referring to the charge was sent on or after a date 10 years prior to the filing of this action.

67.    On information and belief, there are more than 40 class members, and the class is so numerous that joinder of all members is not practicable.

68.    There are questions of law and fact common to the class members, which common  questions predominate over any questions relating to individual class members.  The predominant common questions are:

      a.    Whether the inspection fees were authorized;

      b.    Whether imposition of and charging for the inspection fees violated the contract.

69.     Plaintiff's claim is typical of the claims of the class members.  All have the same factual and legal basis.

70.     Plaintiff  will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer litigation.

71.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

      i.    Actual damages;

      ii.    Costs of suit;

      iii.    Such other and further relief as the Court deems proper.

### COUNT IV – INDIVIDUAL FDCPA

72.     Plaintiff incorporates paragraphs 1-41.

73.     Defendant failed to comply with 15 U.S.C. §1692e when it issued conflicting statements, one of which misidentified the owner of the debt, in Exhibits K and L. Section 1692e provides:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2) The false representation of--**

**(A) the character, amount, or legal status of any debt; . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. .**

-10-

..

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against

Defendant for:

        i.     Statutory damages;

        ii.    Attorney's fees, litigation expenses and costs of suit;

        iii.   Such other and further relief as the Court deems proper.

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Atty. No. 41106 (Cook)

T:\36034\Pleading\Second Amended Complaint_Pleading.WPD

-11-

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>s/Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

<u>**CERTIFICATE OF SERVICE**</u>

      I, Daniel A. Edelman, hereby certify that on August 27, 2019, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system, which sent notice to all parties of record.


                        <u>s/Daniel A. Edelman</u>
                        Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com
Atty. No. 41106 (Cook)