IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON M. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-2355 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CARRINGTON MORTGAGE SERVICES, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jason Roberts ("Plaintiff") brings this proposed class action against Defendant Carrington Mortgage Services, LLC ("Defendant" or "CMS") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and state law. Currently before the Court is Defendant's motion [38] to dismiss Plaintiff's governing second amended complaint. For the reasons explained below, Defendant's motion [38] is granted. Plaintiff's second amended complaint is dismissed without prejudice. Plaintiff shall have until December 7, 2020 to file a motion for leave to file a third amended complaint, if he can do so consistent with this opinion and Federal Rule of Civil Procedure 11. If no such motion is filed by that date, the Court will convert the dismissal to with prejudice and enter a final judgment.

**I.      Background**

The following facts are taken from Plaintiffs' second amended complaint [37] ("Complaint") and assumed to be true for purposes of Defendant's motion to dismiss. Plaintiff is an individual who resides in this District. Defendant is a Delaware limited liability company engaged in the business of mortgage servicing. According to the Complaint, Defendant is a "special server," which is "mortgage industry jargon for a servicer that specializes in delinquent

and defaulted loans." [37] at 2. Defendant is also allegedly a "debt collector" as defined in the FDCPA.

Plaintiff had a residential mortgage loan ("Loan") that was past due at the time Defendant took over as the servicer on February 2, 2018. Plaintiff's Loan was a Federal Housing Administration ("FHA") loan. FHA regulations relied on by Plaintiff provide in relevant part that: "The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary [of Housing and Urban Development ('Secretary')], if such action does not constitute an illegal trespass[.]" 24 C.F.R. § 203.377. According to the Complaint, the FHA "interprets the regulation to mean that once a property has been found to be occupied, no further inspections may be charged." [37] at 3, ¶ 21 (citing HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d); Mortgagee Letter 81-26, 1981 WL 389744 at *1 (June 16, 1981)). The FHA regulations allegedly are incorporated into Plaintiff's note and mortgage and limit what may be charged to the borrower.

Plaintiff has continually occupied the mortgaged property. According to the Complaint, CMS knew that the property was occupied by August 15, 2018, when Defendant served Plaintiff at the property in a mortgage foreclosure action. Defendant also corresponded with Plaintiff at the property's address in connection with a loss mitigation application. Despite its knowledge that

Plaintiff had been occupying the property, Defendant charged Plaintiff $20 property inspection fees on the following dates: March 20, 2018, April 13, 2018, June 1 and 20, 2018, August 16, 2018, September 13, 2018, October 17, 2018, November 9, 2018, March 1, 13, and 22, 2019, April 9 and 18, 2019, May 17, 2019, and June 18, 2019. Defendant included these amounts in its monthly mortgage statements. The Complaint alleges that Defendant's inspection fees were unauthorized and improper. As a result of the fees, Plaintiff allegedly "incurred expenses such as hiring an attorney, mailing costs, distress, annoyance, and time spent addressing the matter." [37] at 4, ¶ 30. The addition of the fees to his monthly mortgage statements also "increased the past due amount, which made it harder for Plaintiff to rehabilitate the loan, and which increased the amount needed to payoff the loan." *Id*.

Between April and May 2019, Defendant sent two letters to Plaintiff's counsel concerning Plaintiff's dispute of his debt. See [37-1] at 59-60, The April 2, 2019 letter stated that "the current 'investor' or owner of the loan is" Defendant. [37] at 5. However, the May 6, 2019 letter stated that the current owner of the note is TIAA Bank. Both letters identify Defendant as the servicer. See [37] at 5; [37-1] at 55-60 (Appendices K & L).

Plaintiff paid off the Loan by August 2019 because he feared losing his home and was concerned about the fees being added to his balance every month. Plaintiff's mother took out a home equity line of credit ("HELOC") in order to provide Plaintiff with the funds necessary to pay off the Loan. The interest rate on the HELOC loan (3.6%) was lower than the interest rate being charged by Defendant (4.5%). Prior to paying off the Loan, Plaintiff received a Payoff Statement from Defendant dated April 8, 2019. The detail of charges that came with that document included multiple property inspection fees, although in other places the amount for such fees was recorded

3

as zero. There is also a charge for $6,688.22 for "other unpaid expenses," which has increased by over $1,300.00 since the payoff statement.

Plaintiff brings four claims based on these allegations. In Count I, Plaintiff alleges that Defendant violated the FDCPA, 15 U.S.C. §§1692, 1692e(2), 1692e(10), 1692f and 1692f(1), by charging Plaintiff for unauthorized property inspection fees and representing that it had the right to collect a balance that included unauthorized property inspection fees. In Count II, Plaintiff alleges that Defendant "engaged in unfair and deceptive acts and practices … by charging Plaintiff for property inspection fees," in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. [37] at 7. In Count III, for breach of contract, Plaintiff alleges that Defendant "violated the note and mortgage by charging Plaintiff for property inspection fees." *Id*. at 9. Finally, in Count IV, Plaintiff asserts an "individual FDCPA" claim on behalf of herself only (not the proposed class). Count IV alleges that Defendant violated 15 U.S.C.§ 1692e by issuing conflicting statements in April and May 2009 showing different entities as the current owner of Plaintiff's Loan.

Currently before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim.

## II. Legal Standard

Defendant's Rule 12(b)(6) motion challenges the legal sufficiency of the Complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to

4

the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012); see also *Paulsen v. Abbott Labs.*, 368 F. Supp. 3d 1152, 1180 (N.D. Ill. 2019). To survive a motion to dismiss under Rule 12(b)(6), the Complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the Complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

### III. Analysis

#### A. The Property Inspection Charges

Defendant moves to dismiss Plaintiff's first FDCPA claim, breach of contract claim, and consumer fraud claim on the basis that Plaintiff's mortgage agreement authorizes the property inspection charges on which all three claims are based. In particular, the mortgage agreement (which is attached to and central to the Complaint, see *Geinosky*, 675 F.3d at 745) authorizes Defendant to "inspect the Property if … the loan is in default" and to "do or pay whatever is necessary to protect the value of the Property and [Defendant's] rights in the Property." [37-1] at 9-10.

Reviewing the relevant contract language and case law, the Court concludes that Plaintiff has not plausibly alleged that Defendant violated the mortgage agreement by imposing property inspection fees that are not "necessary" to protect the value of the mortgaged property and Defendant's rights in the property. Because neither party has identified any on-point precedent from the Seventh Circuit or Illinois Supreme Court, the Court is guided by decisions from this district. The limited case law from this district establishes that a "necessary" expense, as that term

5

is used in mortgage agreements with the same language at issue here, means an expense that the mortgagor *actually incurred*, rather than an expense that is considered "reasonable" according to some other criteria.

In *Majchrowski v. Norwest Mortgage, Inc*., 6 F. Supp. 2d 946 (N.D. Ill. 1998), the court considered nearly identical mortgage language (also governed by Illinois law), but in the procedural posture of summary judgment: "If Borrower fails to perform the covenants and agreements contained in this Security Instrument, … then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property." *Id.* at 964. The court determined that the mortgage provided "no limitation on what the lender may do and pay for except that it must be necessary to protect its rights in or the value of the property." *Id*. at 965. "The lender's actions do *not*, for example, have to be *reasonable, economical, or fair to the borrower*." *Id*. (emphasis added). The court therefore interpreted the mortgage language to authorize "property inspection fees *actually incurred* because of plaintiffs' default and bankruptcy." *Id*. at 965 (emphasis added). The defendant provided an affidavit explaining that inspections are necessary because they "may reveal whether the property is still occupied, whether the utilities remain connected, and whether the property has fallen into disrepair." *Id*. The affidavit also stated that the defendant "hired outside vendors to inspect their property periodically" and that the $24.75 and $41.25 fees were actually incurred by defendant and "passed 'straight through' to the Majchrowskis." *Id*. at 951. The plaintiffs did not challenge the "affidavit testimony that filing the proof of claim was necessary to protect Norwest's rights in the property and that inspecting the Majchrowski's property was necessary to protect both its rights in and the value of the property." *Id*. at 965.

6

Applying the principles outlined in *Majchrowski* to essentially the same mortgage language, the court in *Chatman v. Fairbanks Capital Corp.*, 2002 WL 1338492 (N.D. Ill. June 18, 2002), denied a mortgagor's motion to dismiss where the plaintiff alleged that the property inspection "fees were 'merely book entries in favor of [defendant that] do not represent actual payments or liabilities.'" *Id*. at *4; see also *Leszanczuk v. Carrington Mortgage Servs., LLC*, 2020 WL 1445612, at *5 (N.D. Ill. Mar. 25, 2020) (interpreting essentially identical mortgage language to allow imposition of single inspection fee at issue in that case, but noting that plaintiff was not without recourse because "the contract expressly limits Defendant's rights to collection inspection fees to those that are 'necessary'"); cf. *Hickman v. Wells Fargo Bank, N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010) (dismissing contract claim where contract allowed fee); *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 834-35 (N.D. Ill. 2011) (dismissing contract and ICFA claims based on disputed charges where contract permitted mortgage servicer to "do and pay for whatever it deems . . . appropriate to protect [its] rights") (internal quotation marks and citation omitted)).

In this case, the governing mortgage contains essentially the same language that the courts in *Majchrowski*, *Chatman*, and *Leszanczuk* interpreted to allow the lender to pass on to the borrower charges, including specifically inspection fees, that it actually incurred in protecting the value of the mortgaged property. The Complaint nonetheless alleges, and Plaintiff argues, that Defendant's imposition of property inspection fees after it confirmed Plaintiff's occupancy of the property was "unauthorized and improper," [37] at 4, because those charges conflict with a HUD regulation, 24 C.F.R. § 203.377, and HUD interpretations of the regulation, which taken together allegedly provide that "once a property has been found to be occupied, no further inspections may be charged." [37] at 3, ¶ 21 (citing HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d); Mortgagee Letter 81-26, 1981 WL 389744 at *1 (June 16, 1981)). Plaintiff asserts that "the FHA regulations are

incorporated into the note and mortgage, and the restriction limits what may be charged to the borrower." *Id.*, ¶ 22. In particular, Plaintiff points to § 8 of the mortgage, with provides that "Lender may collect fees and charges authorized by the Secretary." [48] at 5.

A threshold issue in considering these sources is whether the HUD regulation and interpretations have been incorporated into the mortgage agreement. "'When determining under Illinois law whether something is incorporated into a contract, we limit our inquiry to the four corners of the contract.'" *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) (quoting *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 901 (7th Cir. 1996)). "'Mere reference to another contract or document is not sufficient to incorporate its terms into a contract.'" *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 715 (7th Cir. 2019) (quoting *Rosenblum*, 299 F.3d at 666). "Instead, 'there must be an express intent to incorporate.'" *Id.*; see also *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("Illinois requires that incorporation be clear and specific"). Section 8 of Plaintiff's mortgage provides that "Lender may collect fees and charges authorized by the Secretary." [48] at 5. The Court recently construed the same language, in a lawsuit also brought against Defendant, and concluded that it did "not expressly incorporate any limitation" from HUD regulations and therefore those regulations did not impose "a limitation on Defendant's ability to collect inspection fees." *Leszanczuk*, 2020 WL 1445612, at *4; see also *Hayes v. M & T Mortg. Corp.*, 906 N.E.2d 638, 641 (Ill. App. 2009) (references to HUD regulations in mortgage agreement fell short of the showing necessary to demonstrate that the parties intended to incorporate the regulations, in their entirety, into their mortgage agreement; the provisions cited by mortgagor reflected only an acknowledgment that the lender's foreclosure rights under the mortgage were subordinate to

applicable HUD regulation, but they did not demonstrate an intent to make each loan regulation enforceable under the parties' agreement).

More generally, HUD handbooks and interpretations do not "impose any 'binding obligations or legal duties' upon parties." *Dawoudi v. Nationstar Mortgage LLC*, 2020 WL 1330381, at *4 (N.D. Ill. 2020). Nor does Plaintiff cite "any authority indicating that HUD mortgagee letters bind this Court or supplant parties' express contractual obligations." *Id*. The HUD letter also "is not the smoking gun that Plaintiff thinks it is, because that letter's guidance has since 'changed,' and, in any event both the modification and the regulatory cross-references in the original letter make clear that the reimbursements in question pertain only to those required by HUD." *Leszanczuk*, 2020 WL 1445612, at *6 (citing HUD Mortgagee Letter 90-34, 1990 WL 10022430 at *4 (Sept. 19, 1990) ("Mortgagee Letter 81-26 notified mortgagees that HUD would reimburse mortgagees for one inspection after a 45-day period of delinquency but 'once the property has been found to be occupied, no further inspections are required by HUD and reimbursement would not be allowed.'"); 24 C.F.R. § 203.402 (discussing a laundry-list of reimbursable expenses).

Apart from relying on the FHA regulation and interpretations, Plaintiff asserts that his claims should not be dismissed under *Majchrowski* because Defendant "has not demonstrated the work it actually did to merit reimbursement." [48] at 4. However, it is Plaintiff's burden to plead a claim that satisfies Rule 8. The Complaint does not allege any facts plausibly suggesting that Defendant did not actually incur the expenses that it passed on to Plaintiff as inspection fees. Instead, the Complaint as currently pled suggests that Defendant took some action to confirm occupancy each month. See [37] at 4, ¶ 27 (alleging that "each inspection confirmed that Plaintiff occupied the property"). In reviewing a 12(b)(6) motion, the Court "will consider new factual

9

allegations raised for the first time on appeal provided they are consistent with the complaint." *Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001) (internal quotation marks and citation omitted); see also *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). But this does not help Plaintiff because neither his Complaint nor his response to the motion to dismiss alleges any facts plausibly suggesting that Defendant did no work to confirm occupancy, or charged Plaintiff more than it actually incurred in doing so. Defendant's motion to dismiss Count IV is therefore granted. However, Plaintiff is free to move for leave to amend his complaint to allege such a theory, if he believes he can do so consistent with his obligations under Rules 8 and 11. See Fed. R. Civ. P. 8, 11.

      **B.**      **The April and May 2019 Attorney Letters**

Plaintiff's individual FDCPA claim (Count IV) is based on a letter that Defendant sent Plaintiff's attorney in May 2019. The letter misidentified the owner of the note as TIAA Bank, which Plaintiff alleges is a false or misleading representation in violation of 15 U.S.C. § 1692e. Defendant argues that thi claims should be dismissed for multiple reasons. The Court agrees with Defendant that Plaintiffs fails to allege a plausible FDCPA claim based on the May 2019 letter to Plaintiff's counsel, and therefore dismisses Count IV as well.

In evaluating whether a plaintiff has stated a claim under section 15 U.S.C. § 1692e based on a communication to the plaintiff's attorney, "the right question … is whether it would deceive or mislead a competent attorney," even one who does not specialize in consumer debt law. *Gomez v. Cavalry Portfolio Servs., LLC*, 962 F.3d 963, 967–68 (7th Cir. 2020) (citing *Bravo v. Midland Credit Management, Inc.*, 812 F.3d 599, 603 (7th Cir. 2016)); see also *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 736 (7th Cir. 2016). The rationale for holding communications to attorneys to a heightened standard is that "[l]awyers often receive and critically evaluate demands against

10

their clients" and "have the resources to determine for themselves whether those demands are valid." *Gomez v. Cavalry Portfolio Services, LLC*, 962 F.3d 963, 968 (7th Cir. 2020). Nothing in the Complaint (or Plaintiff's response to the motion to dismiss) suggests that Plaintiff's counsel lacked the means to determine whether TIAA Bank had any demand against Plaintiff as owner of the note—a note that the attorney had communicated with Defendant about only a month prior. See [37] at 5; [37-1] at 55-60 (Appendices K & L). Instead, both letters plainly identify Defendant as the servicer. See [37-1] at 55, 59. And Plaintiff's attorney was able to contact Defendant to receive a payoff quote, and then successfully paid off the Loan. See [37] at 5; compare *Bravo*, 962 F.3d at 603 (affirming dismissal of FDCPA claim; concluding that letters sent by debt collector to consumer's attorney requesting payment of two debts that had been resolved in the parties' earlier settlement did not violate Section 1692e because a competent attorney would have been able to determine whether his client continued to owe a debt after it was settled in full and would therefore not have been deceived by the two letters).

Further, nothing alleged in the Complaint suggests that the misidentification of TIAA Bank as the owner of the note was material to any decision of Plaintiff or his attorney. See *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (explaining that materiality is an element of a § 1692e claim). A false or misleading statement is "material" if it has "'the ability to influence a consumer's decision.'" *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 878–79 (N.D. Ill. 2018) (quoting *Lox*, 689 F.3d at 826)). Plaintiff never explains how the misidentification of the owner of the note in the May 2019 had or could have any effect on a decision made by Plaintiff in connection with the Loan. Compare (*Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75 (2d Cir. 2018) (misidentification of servicer as creditor in letter sent to consumer (to which least sophisticated consumer standard applied) was not deceptive as to the nature or legal status of the

11

debt and would not have prevented least sophisticated consumer from responding to or disputing action).[1]

## IV. Conclusion

For these reasons, Defendant's motion to dismiss [38] is granted. Plaintiff's second amended complaint is dismissed without prejudice. Plaintiff shall have until December 7, 2020 to file a motion for leave to file a third amended complaint, if he can do so consistent with this opinion and Federal Rule of Civil Procedure 11. If no such motion is filed by that date, the Court will convert the dismissal to with prejudice and enter a final judgment.

Dated: November 6, 2020

Robert M. Dow, Jr.
United States District Judge

---

[1] Since the Court is dismissing all four counts of the Complaint, it is unnecessary to reach Defendants' argument concerning personal jurisdiction over putative claims of non-Illinois borrowers.